# EXHIBIT 2

Case 5:26-cv-01853-HE   Document 1-2   Filed 07/20/26   Page 2 of 17

**CERTIFIED MAIL**®

OKLAHOMA
INSURANCE
DEPARTMENT

Legal Division
Insurance Commissioner G
400 NE 50th St.
Oklahoma City, OK 73105

9589 0710 5270 4100 3875 87

OKLAHOMA CITY OK 730

22 JUN 2026 PM 5 L

quadient
FIRST-CLASS MAIL
IMI
$011.60⁰
06/22/2026 ZIP 73105
043M31257515

US POSTAGE

Axis Insurance Company
10000 Avalon Blvd., Ste. 200
Alpharetta, GA 30009

RECEIVED
MAILROOM

JUN 2 6 2026

AXIS INSURANCE
ALPHARETTA

30009-253150



**OKLAHOMA INSURANCE DEPARTMENT**

Insurance Commissioner, Glen Mulready

400 NE 50th Street    405.521.2746    405.522.0125
Oklahoma City, OK 73105    oid.ok.gov

Legal Division

June 19, 2026

AXIS INSURANCE COMPANY
10000 AVALON BLVD
STE 200
ALPHARETTA, GA 30009

RE:   Aama Hotels Group, LLC v. AXIS INSURANCE COMPANY, CJ-2026-186, Oklahoma County, State of Oklahoma

Dear Sir or Madam:

Enclosed is a copy of the above-captioned summons served on the Insurance Commissioner as designated agent for service of process of foreign or alien insurers doing business in the State of Oklahoma (36 O.S. § 621).

Sincerely,

Maria Torres
Legal Department

Enclosure

cc:
CORPORATION SERVICE COMPANY
10300 GREENBRIAR PLACE
OKLAHOMA CITY, OK 73159-7653

## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

Aarna Hotels Group LLC, an Oklahoma )
limited liability company, )
)
            Plaintiff, )
)
v. )    Case No. CJ-2026-186
)
AXIS INSURANCE COMPANY, a )
foreign corporation; SOFIA HAMIRANI, )
individually, )
THE LIBERTY COMPANY INSURANCE )
 BROKERS, LLC itself and d/b/a )
TEXAS COMMERCIAL AGENCY, )
)
 A foreign limited liability company. )
)
            Defendants. )

### SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**    **Axis Insurance Company**
**c/o Oklahoma Insurance Department**
**400 NE 50th St**
**Oklahoma City, OK 73105**

You have been sued by the above named Plaintiff, and you are directed to file a written answer to the attached Petition in the Court at the above address within twenty (20) days after service of this summons upon you exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorney for the Plaintiff. Unless you answer the Petition within the time stated, judgment will be rendered against you with costs of the action.

**ISSUED** this $5$ day of June, 2026.

Shellie Kraft, Court Clerk

By: DESIREE CURINGTON, DEPUTY
_____
Deputy Court Clerk

(SEAL)

Attorney for Plaintiff:

NAME:    Clint A. Claypole, OBA #30045
    **LONG, CLAYPOLE & BLAKLEY LAW, PLC**
ADDRESS:  122 W. Randolph
    P. O. Box 3623
    Enid, Oklahoma 73702
TELEPHONE NO.: (580) 233-5225

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

OKLAHOMA INSURANCE DEPARTMENT
RECEIVED
JUN 19 2026
LEGAL DIVISION

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

FILED
GARFIELD COUNTY OKLA
JUN 03 2026
BY SHELLIE KRAFT
COURT CLERK
DEPUTY COURT CLERK

Aarna Hotels Group LLC, an Oklahoma )
limited liability company, )
)
Plaintiff, )
)
v. ) Case No. CJ-2026-186.01
)
AXIS INSURANCE COMPANY, a )
foreign corporation; SOFIA HAMIRANI, )
individually, )
THE LIBERTY COMPANY INSURANCE )
BROKERS, LLC itself and d/b/a )
TEXAS COMMERCIAL AGENCY, )
)
A foreign limited liability company. )
)
Defendants. )

**PETITION**

COME NOW the Plaintiff and for its causes of action against the Defendants allege and

state as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff, Aarna Hotels Group LLC, is an Oklahoma limited liability company registered

to do business in the State of Oklahoma, with its principal place of business in Garfield County,

State of Oklahoma.

2.      Defendant, AXIS INSURANCE COMPANY ("AXIS") is an Illinois corporation with its

principal place of business in the State of Georgia and conducting business in the State of

Oklahoma.

3.      Defendant, THE LIBERTY COMPANY INSURANCE BROKERS, LLC ("Liberty")

upon information and belief, is a Texas limited liability company not registered to do business in

the State of Oklahoma; owns and operates an insurance agency in Texas; and was at all relevant

1

times an agent and/or ostensible agent of AXIS and doing business in the name of TEXAS COMMERCIAL AGENCY .

4.   Upon information and belief, Defendant Sofia Hamirani is a licensed producer and a resident of Texas.

5.   Venue is proper in this Court pursuant to 12 O.S. §137.

### FACTUAL BACKGROUND

6.   Plaintiff owns the following Insured Property to-wit: 3005 W. Owen K. Garriott Rd., Enid Oklahoma 73703 ("Insured Property").

7.   Plaintiff (sometimes referred to herein as "the Insured") did enter into a contract of insurance with Axis via its agent Liberty to provide coverage for the Insured Property, Policy No. EAF66053324 ("the Policy") through Axis' agent, Liberty.

8.   The Policy was in full force and effect at the time of the loss in question which occurred on June 4, 2025 when the Insured Property was damaged and potentially dates thereafter.

9.   The Insured timely filed claims for indemnity under the Policy for damage to the Insured Property (referred to collectively as "the Claim").

10.   As agent for Axis, Liberty owed to the following duties to the Insured:

    a.   use reasonable care, skill and diligence to procure and/or renew coverage as the insured requested that meets the insured's stated needs;

    b.   when an agent for Axis speaks, it owes a duty to do so accurately and truthfully; and

    c.   to speak and fully disclose all material information to an insured about Axis' bad faith claims handling tactics, its reliance on undisclosed definitions or standards outside of the Policy, internal and external complaints about Axis' handling of fire claims, and other material information any insured would deem reasonable in making an insurance purchase decision.

2

11.    Industry standards, as well as an agent's duty of reasonable skill, care and diligence in the procurement and/or renewal of insurance, requires agents of Axis to act in accordance with the training and contractual requirements Axis imposes on them which exist to ensure policyholders receive the coverage they request and an agent binds coverage in accordance with their representations to the insured and Axis' internal guidelines.

12.    Upon information and belief, Liberty employees hold accreditations under the Chartered Property Casualty Underwriter ("CPCU") program. To achieve CPCU designation, an individual must satisfactorily complete eight (8) national examinations covering various phases of property-casualty ("P&C") insurance and met industry experience and ethical requirements and is meant to designate an agent's expertise in the field.

13.    Agents for Axis should meet their duties inter alia by performing an in person inspection of the Insured Property prior to the inception of coverage and routinely thereafter verify the condition and attributes of the Insured Property for the purposes of:

    a.    the agent's accurate calculation of replacement cost(s); and
    b.    the agent's accurate representation that the Insured Property qualifies for coverage under Axis guidelines, rules and criteria.

14.    Because each renewal or binder is a new sale and contract, an agent should maintain a baseline of the Insured Property's condition throughout the insurance relationship with the Insured.

15.    The Policy is a contract, one that obligates Axis to indemnify the Insured upon the occurrence of a covered loss.

16.    Axis' issuance of the Policy rests on the agent's certification of the Insured Property's qualifications under Axis' guidelines – a critical representation to both Axis and the Insured that

3

the Insured Property meets the criteria for coverage as described and prescribed at the time of inception and/or renewal for which the agent is responsible.[1]

17.    An agent further represents, at the very least implicitly through the act of selling, procuring and/or renewing, binding coverage (and, in certain instances, expressly) that no condition, pre-existing damage, deterioration, wear and tear or other defect will operate to negate the Insured Property's eligibility for full coverage under the Policy in the event of loss.

18.    Agents of Axis have a duty to inspect the Insured Property to determine this eligibility for coverage under Axis' internal underwriting requirements as there is no other way for an agent to gather such information needed to accurately relay to Axis (and the insured) whether the property rightfully meets the criteria for coverage.

19.    Upon information and belief, Liberty had binding authority to instruct Axis to issue coverage which, therefore, was a representation by Liberty and that the Insured Property met all criteria necessary and was eligible for coverage.[2]

20.    In the event the agent would have found that the Insured Property failed to qualify for coverage at any point in the insurance relationship (i.e.- the roof is improperly described or affected by pre-existing conditions), the agent owes an independent duty to report the same to both the Insured and Axis.

21.    Both Liberty and Axis thereby either knew or should have known of any material defect, pre-existing damage or other conditions that would exclude the Insured Property from coverage and failed to disclose it.

22.    Upon information and belief, neither Liberty or Axis:

---

[1] This must be true, for the issuance of coverage upon a property that does not qualify at the time would constitute an illusory coverage violation, as well as a violation of Axis underwriting rules.

[2] Such representation is repeated each time a policy renews and includes the description of the property being insured, including square footage.

4

a. never inspected the Insured Property or procured such an inspection from a third party prior to issuing coverage;

b. never verified the Insured Property's condition, characteristics or attributes, whether at Policy inception or upon each subsequent annual renewal of the Policy;

c. regardless of whether an inspection occurred, never disclosed to the Insured that the Insured Property was ineligible under Axis underwriting rules for the requested coverage for any reason;

d. regardless of whether an inspection occurred, never advised the Insured that the Insured Property had any defect, pre-existing damage or other condition that would exclude it from coverage; and

e. required or otherwise asked the Insured to calculate or request a specific amount of coverage for the Insured Property.

23. The Insured did reasonably rely upon the purported expertise, specialized knowledge and representations recited *supra*.

24. The Policy functions like an "all risk" policy – that is, if the Policy does not expressly exclude a loss, then the Policy should afford coverage for the loss pursuant to the loss clause. Therefore, the Policy affords coverage for the Insured Property for damage resulting from fire damage is not expressly excluded from coverage.

25. The Policy does not define, limit or otherwise mitigate coverage for fire damage or provide any limitation on how or when such coverage will apply.

26. Adjusters and/or engineers on behalf of Axis did deny or refuse to make a coverage decision on the Claim even when a loss inspection of the Insured Property clearly showed insured damage.

27. Upon information and belief, Axis employed its hand-chosen engineering firm (who are dependent on Axis for business) to drum up sham reports that merely rubber stamp the adjuster's misrepresentations concerning the Insured Property.

28. The Insured Property was damaged during a fire which occurred in Enid, Oklahoma on June 4, 2025 and potentially dates thereafter.

5

29.     The Insured Property sustained substantial fire damage.

30.     As result of the damage sustained to the space, infrastructure and equipment have incurred substantial damage from the fire and resulting post-fire damage.

31.     Upon information and belief, the adjuster and engineering company for Axis conducted an inadequate inspection and failed to recognize the vast damage to the Insured Property.

32.     The Insured did hire a reputable and trustworthy public adjuster that also conducted an inspection of the Insured Property.  The Insured's adjuster determined that the Insured Property had suffered serious fire damage and that extensive repairs were required.

### COUNT 1 – BREACH OF CONTRACT AGAINST AXIS

33.     All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

34.     The Insured entered into the Policy with Axis to provide it with insurance for the Insured Property.

35.     The Policy was in full force and effect at all material times hereto.

36.     The Insured provided proper and timely notice to Axis of the Claim for damage arising from fire, which caused significant damage to the Insured Property.

37.     The Policy coverage includes all fortuitous losses – which necessarily includes damage sustained by fire.

38.     The Policy does not define, distinguish, or limit fire damage in any fashion.

39.     The Insured complied in all material ways with the terms and conditions of the Policy.

40.     Axis breached its contractual obligations under the terms and conditions of the Policy by failing to pay the Insured all benefits owed under the terms and conditions of the Policy and for wrongfully denying the Claim.

6

41.    As a result of Axis breach of contract and other wrongful conduct, the Insured incurred damages.

## COUNT 2 – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING ("BAD FAITH") AGAINST AXIS

42.    All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

43.    At all relevant times hereto, Axis owed the Insured a duty of good faith and fair dealing.

44.    Axis knowingly, intentionally, purposefully, wrongfully and repeatedly breached its duty to deal fairly and in good faith by engaging in at least the following acts and omissions:

    a.    Knowingly engaging in a pattern and practice of:

        i.    arbitrarily and capriciously handling the Claim;

        ii.    denial-oriented investigation and claim handling practice regarding the Claim;

        iii.    denying indemnity payment owed to the Insured, as its insured, on the valid fire Claim.

        iv.    withholding pertinent benefits, coverages and other provisions due the Insured under the terms and conditions of the Policy in violation of the Unfair Claims Settlement Practices Act as codified at 36 O.S. §§1250.1-1250.16;

        v.    limiting or denying rights inherent to the Insured;

        vi.    recklessly disregarding said rights;

        vii.    forcing the Insured to retain counsel to recover insurance benefits owed under the terms and conditions of the Policy;

        viii.    manipulating the Claim to ensure denial;

        ix.    ignoring covered fire damage;

        x.    denying the Claim by asserting pre-existing damages and/or faulty installation without a pre-inception property inspection and/or without reasonably updated knowledge of the pre-loss condition of the Insured Property; and

        xi.    utilizing biased third-party adjusters and/or engineers who further helped to ensure denial of the Claim by writing reports and/or estimates denying the existence of valid fire damage to justify the denial of the Claim.

    b.    Knowingly and purposefully failing to:

i.  inspect the Insured Property prior to inception of coverage and/or maintain current information as to the condition of the Insured Property prior to the loss;

ii.  notify the Insured, both prior to and at the inception and renewal of the Policy, of any pre-existing damage and other conditions that, if a claim were made, would limit coverage;

iii.  communicate all coverages and benefits applicable to the Claim;

iv.  perform a proper, timely, fair and objective investigation of the Claim;

v.  pay the full and fair amount for the fire damage sustained to the Insured Property in accordance with the Policy's terms and conditions;

vi.  base denial of the Claim on valid, accurate and reasonable grounds; and

vii.  disclose its lack of compliance with its own underwriting guidelines, policies and procedures in denying coverage to the Insured.

45.  Axis' conduct, as described above, constitutes bad faith and is a material breach of the terms and conditions of the Policy and its underlying insurance contract between the parties.

46.  Axis has no reasonable basis in its refusal to recognize and pay the Insured the agreed replacement costs per the Policy for damage caused by the fire to the Insured Property.

47.  As a consequence of Axis' breach of good faith and fair dealing, the Insured sustained damages, including deprivation of monies rightfully belonging to the Insured; damages for the ongoing and continued cost for materials and labor to attempt to abate the damage; equipment damage, damages to the relationship between certain tenants of the Insured as a result of continued damage certain tenants of the Insured have and are experiencing in the Insured Property; and harm of anger, stress, worry, and physical and emotional suffering that naturally results from an insurance failure creating damage to the business of the insured.

48.  Axis' conduct was intentional, willful, malicious and/or in reckless disregard of the rights of the Insured. Axis' actions during the handling of the Claim demonstrate it acted intentionally

8

and with malice, and breached its duty to deal fairly and in good faith and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

49.     Axis enjoyed increased financial benefits and ill-gotten gains as a direct result of the wrongful conduct described above herein, which resulted in the injury to the Injured.

**COUNT 3 – NEGLIGENT PROCUREMENT OF INSURANCE**
**AGAINST LIBERTY AND HAMIRANI**

All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

50.     At all relevant times material hereto, Liberty and Hamirani acted as agent and/or employee for Axis and, therefore, Axis is vicariously liable for Liberty's and Hamirani's conduct.

51.     In procuring the Policy, Liberty and Hamirani had a duty to:

   a.   use reasonable care, skill and diligence to procure and/or renew coverage as the Insured requested that meets the Insured's stated needs; and

   b.   to speak accurately and truthfully by informing the Insured of all coverages, advising the Insured of the benefits, risks, limitations and exclusions thereof, and perform a reasonable inspection of the Insured Property prior to procuring the coverage and thereafter upon renewal to ensure no changes to the Policy were necessary or required.

52.     Liberty and Hamirani breached their duties owed to the Insured by:

   a.   knowingly and purposefully procuring and renewing:

      i.    illusory coverage; and
      ii.   coverage deviating substantially and materially from that which the Insured requested.

   b.   failing to:

      i.    follow and abide by Axis underwriting policies/guidelines;
      ii.   perform all necessary inspections of the Insured Property;
      iii.  disclose pre-existing damage to the Insured Property;
      iv.   verify whether its representations to Axis and the Insured that the Insured Property were in good condition was accurate; and

9

v.    procure and renew a policy that provided the requested coverage.

53.    Plaintiffs relied on the representations and omissions of Liberty and Hamirani to their detriment.

54.    As a result of such conduct, the Insured sustained damages, including deprivation of monies rightfully belonging to the Insured; damages for the ongoing and continued cost for materials and labor to attempt to abate the interior damage; damages to the relationship between certain tenants of the Insured as a result of continued damage certain tenants of the Insured have and are experiencing in the Insured Property; and harm of anger, stress, worry, and physical and emotional suffering that naturally results from an insurance failure.

55.    Such conduct was intentional, willful, malicious and/or in reckless disregard of the rights of the Insured and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

### COUNT 4 – FRAUD
### AGAINST LIBERTY AND HAMIRANI

All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

56.    Upon information and belief, Liberty and Hamirani attempted to conceal their failure to actually procure a policy with the requested coverage by manufacturing "Evidence of Commercial Property Insurance" forms that reflect coverage with Axis and/or other companies that do not exist.

57.    Said fraudulent activities and concealments were done intentionally and with the intent that the Plaintiff would rely on said fraudulent activities and concealments.

10

58.    Plaintiff did rely on said fraudulent activities and concealments to their detriment and have been damaged by lack of coverage that was paid for, business interruption, damage to reputation, and other financial losses.

59.    Defendant Hamirani as an employee of Liberty in the course and scope of her employment forged the Plaintiff's signature on a certain "Premium Finance Agreement." No such agreement was ever signed by Plaintiff or any person with the authority of Plaintiff.

60.    Upon learning of the forged agreement, Plaintiff disputed its authenticity which resulted in a cancellation of coverage, collection attempts and further financial and reputational damage to Plaintiff.

61.    Upon information and belief Defendants Liberty and Hamirani have written policies of others under the same policy number given to Plaintiff and submitted claims under said policy that are not Plaintiff's claims. These fraudulent activities have injured Plaintiff's insurability and caused Plaintiff to not have available coverage and puts into question its continued insurability in the future. These fraudulent actions were done intentionally to benefit Liberty and Hamirani and to the detriment of Plaintiff.

62.    Such conduct was intentional, willful, malicious and/or in reckless disregard of the rights of the Insured and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

**COUNT – CONVERSION**
**AGAINST LIBERTY AND HAMIRANI**

All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

11

63.     On or about August 15, 2024 and September 23, 2024, Defendant, Liberty and Hamirani converted to their own use moneys from Plaintiff's accounts which was the property of Plaintiff and to which they were not entitled.

64.     Converted funds include $15,632.53 and to date, Defendants have failed and refused to return the converted funds or explain their removal.

65.     In addition to funds taken directly from Plaintiff's accounts, the fraudulent activities set forth above resulted in the Defendants obtaining funds for coverage that was either fraudulent and illusory and, therefore, premiums paid for such coverage were wrongfully acquired and constitute conversion.

66.     In converting the funds Defendants have acted intentionally and with malice toward Plaintiff.

Accordingly, Plaintiff demands Judgment against Defendant for actual and punitive damages in excess of Seventy Five Thousand Dollars ($75,000), interest, and costs.

## PRAYER

WHEREFORE, this Court should enter judgment on behalf of Plaintiffs against all Defendants for:

 a. Actual damages in an amount in excess of $75,000.00;
 b. Punitive damages under Oklahoma law;
 c. Disgorgement of the increased financial benefits derived by any and/or all of the Defendants as a direct result of the Defendants' wrongful conduct; and
 d. Prejudgment interest, costs and attorneys' fees.

12

Respectfully submitted,

Michael Kelly, OBA #21978
Clint A. Claypole, OBA #30045
LONG, CLAYPOLE & BLAKLEY LAW, PLC
Post Office Box 3623
Enid, Oklahoma 73702-3623
Tel: (580) 233-5225
Fax: (580) 233-3522
*Attorneys for Plaintiff*

13